WILLIAM D. DALY

*v.*

ADDISON ELY.

Judgment for $1,155, and execution and levy upon five or more lots of land, worth at least $2,500; after judgment, conveyance for value, duly registered by the defendant in the judgment to the complainant, of one of the lots levied on, worth at least $1,000, and subsequently, and after advertisement by the sheriff, and before sale, defendant in the judgment conveyed all the lots levied upon to the attorney of record of the plaintiff in judgment—defendant herein—in parol trust for the plaintiff, by absolute deed, for the nominal consideration of one dollar, and defendant herein gave defendant in the judgment a defeasance by which he agreed to reconvey all the lands, at a future day named, for $1,300, about the amount then to be due for principal, interest and sheriff's execution fees upon the judgment; no provision for satisfying the judgment or applying the land conveyed to the payment of the judgment. The defendant in the judgment failed to pay on the day named, and on the following day, to which the sale under the execution had been adjourned, the defendant herein, without any special notice of the sale to the parties inter-

Daly v. Ely.

ested, caused the whole of the lands levied upon to be put up for sale together by the sheriff, and himself purchased them for $50. Subsequently, within a few days, he, at the request of the defendant in the judgment, conveyed the tracts other than that conveyed to the complainant, to a third party, for $1,500, and satisfied the judgment. Upon bill filed to set aside the sheriff's sale—*Held*, (1) Complainant, as grantee of the lot conveyed to him, had an equity to have the other lots applied first to the payment of the judgment before resorting to his; and defendant herein, who had actual notice of the conveyance to complainant, was bound to respect that equity. (2) That the conveyance by the defendant in judgment to the defendant herein, must be considered as a conveyance simply of those lots not previously conveyed to the complainant. The insertion of the description of the complainant's lot was a mere nullity. (3) The acceptance by the attorney of the plaintiff in judgment of a conveyance from the defendant in judgment of the other lots amounted, under the circumstances, and in this court, to an agreement enuring to the benefit of both the defendant in judgment and the complainant, to apply such lots to the payment of the judgment at their fair value; and this is so whether the conveyance is to be considered as a mortgage or an absolute conveyance. (4) That as the judgment was not satisfied of record, but kept alive as a debt of record against the defendant therein, it would seem to follow that the conveyance must be treated as a mortgage, if the grantor so elect. (5) That whether it be treated as a mortgage or a conveyance absolute, the sale made by the sheriff was not a fair and proper mode of ascertaining its value. (6) That, as subsequent events showed that the lots so conveyed by the defendant in execution to the defendant herein, other than that previously conveyed to the complainant, were of ample value to satisfy the judgment, it must, in equity, be considered as satisfied as of the date of the conveyance, and the subsequent sale under it ineffectual and void. (7) Where several tracts of land worth in the aggregate at least $2,500 are sold in a lump, in the absence of the parties interested, for $50, the inadequacy of the price is so great as to shock the conscience and warrant this court in setting aside the sale.

Heard on bill, answer and proofs.

*Mr. Otto Crouse*, for the complainant.

*Mr. Stephen B. Ransom*, for the defendant.

PITNEY, V. C.

The object of this bill is to be relieved from the effect of a sale by a sheriff under a common-law execution, and the conveyance thereunder, of lands to the defendant, which lands had

been conveyed by the defendant in execution to the complainant while subject to the lien of the judgment.

The circumstances are as follows: In February, 1891, one Robert Winslow entered judgment by default in the supreme court against Sarah E. Winslow for about $1,100. The defendant was attorney of record for the plaintiff in this judgment. Subsequently the defendant therein, Sarah E. Winslow, acting by the complainant as her attorney, applied to have the judgment opened, and the court opened it so far as to permit the defendant therein to plead; preserving, however, the lien of the judgment. Mrs. Winslow filed a plea, the cause went to trial, and a verdict was rendered in favor of the plaintiff; and judgment was entered on that verdict on the 30th of September, 1891, for $1,146.55 damages and costs.

The day the verdict was rendered, and before the judgment was entered, Mrs. Winslow conveyed to the complainant a lot of land in Bergen county, which is the subject of the present controversy. The consideration named in the conveyance was $500, that being the balance due the complainant for professional services rendered by him to the defendant in execution.

After judgment rendered, execution was issued against Mrs. Winslow, with directions to levy upon all the lands of which she was seized on the 14th of February, the date of the original entry of the judgment; and no question is made but that the lien of the judgment was prior to the conveyance to the complainant. Under that execution the sheriff of Bergen county levied, not only on the lot conveyed to the complainant, but on several other tracts of land, as the property of the defendant in execution, and advertised the whole for sale on the 25th of November, 1891.

On the 25th day of November the defendant in the judgment —Mrs. Winslow—conveyed to the defendant in this cause all the lands levied upon by the sheriff, consisting of several tracts, including that previously conveyed by her to complainant. The title to a part of the lands so conveyed stood in the name of Mrs. Winslow, and the title to another part stood in the name of a third person, who appears to have held it in trust for her;

Daly *v.* Ely.

so that the effect of the conveyance was to give the defendant herein, who declares that he took the title in trust for his client, the plaintiff in the judgment, a title to a part of the land which he could not acquire by a sheriff's sale under his judgment. The complainant's deed of the 29th of September was already on record, and the defendant had notice of it.

Contemporaneously with the making of the deed from Mrs. Winslow to the defendant herein, the defendant gave to Mrs. Winslow a defeasance, in the following words, and caused the sale of the lands by the sheriff to be adjourned from week to week:

"ARTICLES OF AGREEMENT, made and entered into the twenty-fifth day of November, in the year One Thousand Eight Hundred and Ninety One, between Addison Ely, of the Borough of Rutherford, in the County of Bergen and State of New Jersey, party of the first part, and Sarah E. Winslow and Stewart Winslow, of the same place, party of the second part, in manner following:

"The said party of the first part, in consideration of the sum of one dollar, to him duly paid, hereby agrees to sell unto the said party of the second part all his right, title, and interest in and to all those certain lots, tracts, and parcels of land and premises situate, lying, and being in the Borough of Rutherford, in the County of Bergen and State of New Jersey, described as follows [describing five or more tracts of land], for the sum of thirteen hundred dollars, ($1300,) which the said party of the second part hereby agree to pay to the said party of the first part on or before the first day of March, 1892.

"And the said party of the first part, on receiving such payment at the time and in the manner above mentioned, shall, at his own proper costs and expense, execute, acknowledge, and deliver to the said party of the second part, or to their assigns, a proper deed for the conveying and assuring to them the fee simple of the said premises, free from all encumbrance, except such liens and encumbrances as may now be against the said described premises, which deed shall be delivered at the office of Addison Ely, at Rutherford, N. J., on or before the first day of March, 1892, and not after said last-mentioned date.

"And it is expressly agreed between the parties hereto that this agreement shall cease and become void after the date herein specified for the payment of the said sum of money and the delivery of the deed.

"And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.

"In witness whereof," &c.

Mrs. Winslow set about procuring somebody to pay the sum mentioned in the agreement for her, and succeeded in inducing a

Daly *v.* Ely.

Mr. Meyer, who held a mortgage on a part of the premises conveyed by her to the defendant herein, to advance the requisite sum. The arrangements for such payment were completed before the 1st of March, the time limited by the defeasance, but for some reason the agent who had the matter in charge was unable to carry them out before that day, and the result was that he was unable to tender the money to the defendant herein until a few days after the 1st of March. In the meantime, on the 2d of March, to which date the sheriff's sale had been adjourned, the defendant sent his associate in business to the sheriff's office at Hackensack, and procured the property to be put up for sale, all the parcels in a lump, and bought it for $50. Subsequently, on the 15th day of March, the agent of Mr. Meyer completed his arrangements and called upon the defendant herein with the money and asked him to complete the contract of reconveyance. This he was ready to do, but declined to include in the reconveyance the lot of land here in dispute, which had been previously conveyed by Mrs. Winslow to the complainant herein, and demanded $200 in addition to the $1,300 reserved in the defeasance, whereupon the agent accepted a conveyance of the remainder of the lands and paid the defendant herein $1,500, and he satisfied the judgment of record, and conveyed the lands to the party designated by Mrs. Winslow.

[Here follows a discussion of the facts.]

I have carefully examined the evidence of these parties and I am satisfied that the defendant did make remarks and statements, oral and written, to the complainant, of such a character as led him to believe that he was in no danger of having his purchase cut off by sale under the judgment. The defendant may not have made use of the precise language sworn to by complainant, and he may not have intended to mislead the complainant, or to lull him into false security, or to induce inaction on his part in protecting his rights; but I think that such was the natural result of what took place between them, and that complainant was, in a measure, justified in supposing that his interests were not in jeopardy, and needed no particular attention.

His equity was clear. It was to have the property subject to

the levy, other than that conveyed to him, first applied to the payment of the judgment, before resort was had to that conveyed to him. He heard that all this property had been conveyed to the defendant by Mrs. Winslow, and that she was to have until the 1st of March to redeem it, by paying a round sum, $1,300, which covered the amount due upon the judgment, sheriff's execution fees, and interest. I think that the very statement of the facts would induce him to believe that $1,300 was at least the fair value of the property so conveyed, and that the defendant, as attorney for the plaintiff in the judgment, would not resort to the lot conveyed to him until he had exhausted the other.

It is here to be observed that the conveyance by Mrs. Winslow to the defendant, as attorney for the plaintiff in execution, gave him all he could get by a sheriff's sale, unless he found it necessary to resort to complainant's lot; but it did not destroy complainant's equity to have the other lands first applied to the payment of the judgment, before resort was had to his.

Under these circumstances it seems to me that complainant was well warranted in believing that the defendant would not resort to his lot until he had exhausted his remedy against the others, and such, it seems to me, was the duty of the defendant.

Consider the effect of the transaction of November 25th, the conveyance of Mrs. Winslow to the defendant. No title or interest in the lot conveyed by her to the complainant passed by it; so the effect of it was precisely the same as if that lot had not been included in the conveyance. The result was that the defendant, acting, of course, as attorney for the plaintiff in the judgment, accepted from the defendant in judgment a conveyance of the very property to which the complainant's equity attached. He did so, it is true, without any express agreement that it should be in any wise applied toward the payment of the judgment. The agreement to redeem did not amount to such an application. The consideration named in the deed was $1, but the price at which it was to be redeemed tended to fix a value upon it. There is, however, no provision for the satisfaction of the judgment. Now, in the absence of any express

agreement as to the disposition of the property, in case it was not redeemed, or as to its value, it seems to me that both the defendant in execution, Mrs. Winslow, and the complainant, by virtue of his equity in those lots, had a clear right, in equity, to have the property retained by the defendant applied, at its fair value, to the payment of the judgment. It would be monstrous to hold that, by failing to pay the redemption price at the time fixed, Mrs. Winslow was to lose the right to have any credit whatever on account of the judgment against her; and equally monstrous to hold that the complainant was, for the same reason, to lose his equity.

And this result is equally clear whether the transaction of November 25th is viewed as a mortgage, or as an absolute conveyance. Subjected to the crucial test of the continued existence of the debt (*Pace* v. *Bartles, 2 Dick. Ch. Rep. 170*, and cases cited at *pp. 176, 177*), it is impossible to avoid classifying it as a mortgage. But if it be a conveyance absolute, so that there was no equity of redemption after the date fixed, still it was not a gift, out and out; and the question remained, how much credit was Mrs. Winslow entitled to, on account of it, upon the judgment against her? Its value must, in some manner, be ascertained, either by the agreement of the parties or judicially, unless the repurchase price, $1,300, mentioned in the contract, fixed it. If it did, then the judgment was paid; for it covered the judgment, interest, and sheriff's execution fees, and the subsequent sale under it was unwarranted. If, however, that price did not fix its value, it was, in fact, shortly afterwards, fixed, so far as the defendant and Mrs. Winslow are concerned, by a sale and conveyance by the defendant to Mr. Meyer, at Mrs. Winslow's request, at the price of $1,500, and the payment of that sum to the defendant, and the satisfaction of the judgment. By this transaction the defendant and his client, the plaintiff in the judgment, are estopped from saying that the property conveyed to the defendant in trust for the plaintiff in the judgment was not of sufficient value to satisfy the judgment. Thus, in any view we take of the affair, the judgment was, in equity, paid before the day when the sale took place.

Daly v. Ely.

The sale by the sheriff was not, under the circumstances, a fair mode of ascertaining the value of this property. Counsel for defendant, in his able and elaborate brief, does not contend that it was. On the contrary, he argues that such sales are no longer expected to produce the value of the property, but are used simply as a means of transferring the property from the defendant in execution to the plaintiff therein. If that be so, the effect is to render the defendant's position so much the less tenable. The lot of land here in question is admitted to be worth at least $1,000, and the lot conveyed to Mr. Meyer was worth at least $1,500, while the evidence tends to show that it was worth much more than that. We have, then, four parcels of land worth, in the aggregate, at least $2,500, sold in a body for $50—not enough to pay the sheriff's execution fees.

Now, I think the rule so confidently relied upon by the counsel of the defendant—that this court will not set aside a judicial sale on the ground of mere inadequacy of price—does not reach far enough, is not wide enough, to cover this case. That rule is subject to a familiar exception, viz., that if the inadequacy of price is so great as to shock the conscience, then this court will set it aside; and, if the inadequacy here does not shock the conscience, it is difficult to conceive one which will.

The defendant contends that the inadequacy was condoned by Mrs. Winslow when she settled the affair by accepting a reconveyance of the several lots other than that of complainant, paid the purchase price of $1,500 and had her judgment satisfied. The difficulty in that position is that Mrs. Winslow had no interest in the complainant's lot; and even if she had any, she could not deal with and prejudice complainant's rights. The complainant had nothing to do with that settlement, and was not aware of it. If, then, it were a question of setting aside the sale by the sheriff on the ground of inadequacy of price, I should not hesitate to do so. But nothing can be gained here by a resale, because the plaintiff in execution has received full payment for his judgment without including the complainant's lot, and it is satisfied of record, and the plaintiff in execution has no rights which entitle him to a resale. The remedy of the com-

plainant is to have the sheriff's sale declared null and void, and the conveyance under it set aside and annulled as a cloud upon his otherwise good title.

The defendant attempted to set up an equity based upon the following facts: He says, true it is that the plaintiff in execution received $1,500, $200, or thereabouts, more than the amount due upon his judgment, but that the defence of Mrs. Winslow to the action at law was unjustifiable, and the plaintiff incurred large expenses, arising out of the litigation, over and above the amount which he realized out of the conveyance to Meyer, and that the value of the complainant's lot is no more than sufficient to make the plaintiff in the judgment whole, and declared on the stand that he held the property in trust for the plaintiff in judgment. Admitting all this to be true, I am not ready to hold that it gives the defendant any equity whatever. But I do not think the defendant made out his case in this behalf, as a matter of fact. The complainant, when on the stand, stated under oath the various litigations which he had attended to for Mrs. Winslow, and which went to make up the charge of $500 consideration for the conveyance to him. There were some eight different matters in which he acted as her counsel, including the one suit which resulted in the judgment against her, obtained by the defendant as attorney. The other matters of litigation did not appear to be at all connected with the litigation which resulted in the judgment. It would seem, from the defendant's evidence, that he appeared as counsel for the other parties in those various litigations; and I understand his evidence to be that these extra counsel fees and expenses incurred by his client, Mr. Robert Winslow, were incurred in all these litigations which had been enumerated by the complainant. If that be so, then those extra counsel fees and expenses were incurred in matters disconnected with the recovery of the judgment in question, and give the defendant no equity to take this property, which was the property of Mrs. Winslow, for that purpose.

There was a faint effort to hold the complainant as a mere mortgagee of this property to the extent of $500. The only evidence of that was the very frankly expressed willingness

on his part to give what he recovered beyond that sum to Mrs. Winslow; but there is no proof that the property was conveyed to him by way of mortgage or that there was any express or implied equity of redemption reserved. And I may add that I do not think the case inclines the court to make any inferences which will result in giving the defendant or his client any of the proceeds of the execution in question. I think both Mrs. Winslow and the complainant were surprised to find the property was readily salable at the sum of $1,000, and that is the cause of the complainant's liberal disposition.

Just about, or shortly before, the filing of the bill, the defendant conveyed the property to one Bell, and the bill was amended by making him a party. The proof is that Bell paid only $35 on account of the conveyance, giving a mortgage for the balance of the consideration money, and that the defendant notified him of the complainant's claim at the time he took the conveyance, so that Mr. Bell purchased with full notice, and cannot be held as a *bona fide* purchaser without notice, even to the extent of the $35 paid.

I will advise a decree to the effect above stated, and also that a proper release be made by the defendant Bell to the complainant, and that the defendant Ely deliver up the mortgage given to him by Bell as part of the purchase-money, to be canceled of record. And that he, Ely, pay the complainant's costs.